number 24-5088 and counsel you may proceed. Good morning your honors. Thank you. Can your honors hear me okay? Yes. Thanks. I'm Leah Yaffe with the Federal Public Defender's Office for Mr. Joel Smith and the issue in this case is that the district court erred at sentencing when it determined that there was no sufficiently analogous guideline for Mr. Smith's conviction for Oklahoma child abuse by injury. I'm going to instead pursuant to guideline 2x5.1 the district court should have analogized that conviction to the federal assault guidelines. So the law here is that when there's a crime whether it's a state assimilated crime or an unassigned federal crime that doesn't have a specific offense guideline in Appendix A courts need to first identify the universe of plausibly analogous guidelines for the crime of conviction and then if there's more than one choose the best one. And so this case we're at step one and it's a really low bar to clear and that's we know that from the commentary of the guideline 2x5.1 which says most of the time the guidelines are going to cover the type of conduct that's in an unassigned crime. We know that from this court which has repeatedly like expressed how low the bar is including in rakes when it said what we're looking for is something that's within the ballpark of the crime of conviction. We're just looking for a general umbrella that the state crime here can fit under and the reason it's a low bar makes a lot of sense because the goal is to just get as many cases as possible into the framework of the federal guidelines. Can you direct us to whether we're looking at 2A2.2 or 2A2.3? You had a footnote in your opening brief that sort of suggested you know it's either both I mean it seems like your argument is directed at 2A2.2 on appeal and that's it right? I think this case ends up into a 2.2 the aggravated assault guideline. The reason 2A2.3 is mentioned is just that because the district court found that there was no sufficiently analogous guideline at all it stopped at step one and so going through the process in order in any case like this both assault and aggravated assault are going to be within the universe of possibilities. I think it's pretty clear in this case that once everything goes back and is the full analysis we're in aggravated assault and we're not intending to to suggest that this case is the appropriate one for the regular assault guideline it's just informative at this step one process. The district court cited United States against Clark if that if an argument failed under Clark for child neglect why shouldn't it similarly fail for child abuse? I actually think Clark is a great case for us here because the specific thing that the this court thought was not analogous enough between child neglect and the federal assault guidelines was that child neglect at heart is a crime of omission. You don't need an affirmative assaultive act. Here that is what the difference is with child abuse by injury and child neglect in Oklahoma. There's two different crimes. This one is the one where you need an affirmative assaultive act. That was something that was significant for this this court in Clark I think understandably for the child neglect or child neglect conviction but here we have exactly what Clark said that you would need from the Oklahoma state crime in order to be analogous to the federal assault guidelines. So really it's that both child abuse by injury and the various federal assault crimes require an affirmative assaultive act that risks and typically results in some degree of bodily injury. And I point out that I don't understand the government to really challenge that the basic acts or conduct covered by child abuse by injury is analogous to federal assault or even that most of the time we're talking about something that results in bodily injury and that's really what we need to clear this low bar. What I understand the two main differences the government has raised to be which I don't see as differences but I'll go through them both are mental state and whether sometimes you can have mental injury instead of just physical injury. So starting with the first one mental state child abuse by injury has what's effectively a knowingly general intent mental state. There are some federal assault crimes that have a lower culpability mental state recklessness or even lower. There are also federal assault crimes that require something even higher than knowingly. So we have specific intent crimes that are covered by the aggravated assault guideline. So when we're asking is this guideline does it capture within its umbrella the mental state the severity of culpability from a mental state perspective that Oklahoma child abuse by injury does the answer is yes because knowingly falls within the range of mental states that are covered by this guideline. And we know that this test at step one is to loosely compare the elements of child abuse by injury to the elements of all the federal assault offenses that are within a given guideline. And so is it your position that there is no mens rea gap because the mental state doesn't need to to match you're just if I understand your argument you're the match is that there's intentionality of some kind. Yes, so I think that's correct. I'll restate it just to be clear. The argument is that there's the mental state that's required in Oklahoma is captured within the guideline. We don't need to point to one specific type of federal assault that has every single element that child abuse by injury does if that were the case, child abuse by injury would have a guideline assigned to it. What we need to show is that there's a guideline that broadly encompasses the punishment rules for this degree of culpability. And I'm not sure that a minor difference in mental state, I don't think that would even render something not sufficiently analogous for purposes of step one. But here, I don't even think it's a difference because we know this type of culpable mental state is in fact covered by the assault guidelines, and specifically the aggravated assault guideline. For the second difference that the government raises, the government points out that in the Oklahoma jury instructions defining torture, which is one of the means of child abuse by injury, one means of committing torture is potentially extreme mental cruelty. So not requiring bodily injury. I think as a threshold point, this is a little bit of an unsettled question in Oklahoma. The case the jury instructions say that and then reference also a case that has held that there is no mental injury in a child abuse by injury statute in Oklahoma. But assuming the government is correct, and that some of the time, you're looking at just mental injury, that's also true for the federal assault, for federal assault statutes, right? So there's simple assault, there's ways of committing an assault that isn't, that's an attempted battery and not a true battery. Again, this isn't a difference. And even if it were possible that there's a little bit of difference between the type of mental injury, or whatever it is, in Oklahoma and federal assaults, what we're talking about is, is this roughly the same? Is it roughly comparable enough that we can use the federal guidelines in this case, as opposed to have no guideline at all, and just ask a district court within the statutory range of zero to life to do their best and to start from scratch? And I don't think either of these differences that are in the answer brief, are the types of things that would say, you know what, unfortunately, this is a case where we do not have the benefit of the federal guidance. Let me ask you, let me let me turn this around a little bit and just ask you a question about it. If this were a charging decision we were talking about, and the and the only injury we could prove was a was a mental injury, and would we be able to proceed under the federal assault statute? I think that that would probably fall under at least simple assault. So you'd have an attempted battery or another version of that is putting somebody in reasonable apprehension of immediate bodily harm. Do you have a case on that? I actually think that the I need to double check, but I believe that the Harris case like cited in the reply brief is an example of a simple assault case where somebody drew a dangerous weapon on someone else, but there wasn't actually physical injury. And if I have if I'm giving you the wrong case name, I'll follow up, but I believe it's the Harris case in the reply brief. But I don't I don't think there's a real question that some of the time an assault is an attempted battery instead of an actual battery. We know that from Clark itself, where it says normally we're talking about something that results in bodily injury, but obviously, there's simple assault and what we need is an attempted battery, a battery or placing somebody in reasonable apprehension of immediate bodily harm. I really don't see that as child abuse by injury where you're looking at what is effectively the OCCA has told us a battery statute for children and may or may not have at least a component of a mental injury that results from a true assault as opposed to an assault and battery. If this court doesn't have questions on error at this point, I might quickly turn. Well, could I just before we leave this, could I just ask you, given that you're not challenging the hundred and eighty month sentence for the child neglect conviction, why isn't any error on the abuse sentence harmless? A couple of reasons, Your Honor. So I'll just walk through the steps, if that's OK. The first is we we know many times over from this court and the Supreme Court that guidelines ranges have an anchoring effect on a sentence and that if you skew the starting point, you have reasonably possibly skewed the end result. And so there's at least we know that the government can't can't meet its harmless error burden here for child abuse. So then you ask, does that extend over to the child neglect conviction or sentence? And it's reasonable, reasonable to believe that that downward anchoring effect on the child abuse sentence would also have at least some on the child neglect sentence in this specific case because it's very intertwined conduct. It's the same time period. It's the same course of events. It's the same victim. The district court has indicated that it sees the two crimes as comparable severity here because it awarded them the same sentence. And there's not some other anchoring hold on the child neglect that might undermine those inferences in this case. So for instance, there's not a mandatory minimum that applies to the child neglect where we know it's not moving. So really, the only new information that the district court would have on remand is this offense that you think is comparable to child neglect has a significantly lower guidelines range than the 180 month sentence that was originally awarded. If these two crimes are comparable, it's at least a reasonable inference that there's going to be some downward movement on remand. And this is ultimately something that the government's not going to be able to prove otherwise for harmlessness purposes. Do you have a case that you can point us to that you think meaningfully sets out the relevant data points that our circuit looks at for whether this sort of sentencing package doctrine argument proves availing? You're sort of walking us through what kind of things we should look to to determine why it's reasonable here to conclude the government wouldn't meet their burden. And I'm wondering if there's a specific case that you think our circuit has that articulates those data points. Sure. A couple of things come to mind. So just the first part of that steps that I just went through, we have Sabiona Umana, we have Melina Martinez cases explaining the downward anchoring effect of a guideline and how important it is. And then with the sentencing package doctrine idea, I think in the opening brief we cite to Cattrall, and there was actually an 11C1C plea agreement to a specific sentence. And even in that case, when one sentence had to be sent back and vacated, this court recognized, while I understand that the parties agreed to the ultimate bottom line, we understand a district court to see the overall punishment as one punishment package. And if a piece of that is flawed, then we have them do it by scratch. A district court starts over. We don't assume that they start from the endpoint of the flawed sentence. We assume that they do a complete de novo resentencing. And when that happens, the downward anchoring effect that we know about the interrelationship between these counts, the fact that the district court here, in fact, gave an overall sentence before explaining how it would be split up, all of those things lead us to the conclusion that it's at least likely that the district court is going to go a little bit down from 180 months on remand. So do you see this playing out as we issue a decision that vacates both sentences and sends it back for resentencing? I think typically when there's a vacating of one sentence, you go back for de novo resentencing. So, yes, that's, I think, the standard approach for when there's a sentencing error is to remand for a complete resentencing. In this case, we would ask, you know, the district court would need to determine the exact... Is it, do you, wait, so direct me to some authority where there's only been a sentencing error claimed and not an attack on an underlying conviction where one sentence was unchallenged and we vacated them both and sent it back to start fresh? I think catchall is a good example of that, just to use one that's already in the briefing, where there wasn't a challenge to, I think there was maybe two or three other accounts, but there was to the aggravated identity theft sentence in that case. And because there was a flaw in that sentence, I think this court expressly directed the district court to just start again on remand. I see that I'm out of time. So, unless the court has further questions, we'd ask for a remand for resentencing. All right. Thank you, counsel. Ms. Olam? You need to unmute. I'm so sorry. Lena Olam for the United States. I would like to start by clarifying a couple of points that Ms. Yaffe characterized about our position, particularly about what kind of conduct is required to violate the Oklahoma child abuse statute. When we talk about child abuse by injury, both the mens rea and the conduct are different in kind from a typical federal assault. First, I think I heard Ms. Yaffe say that the mens rea for child abuse by injury was a standard criminal intent unknowingly or intentionally. Rather, 843.5 has a mens rea of willfully or maliciously. Second, to the extent that our brief talks about the fact that the Oklahoma jury instructions make clear that torture can be achieved by extreme mental cruelty, that doesn't go to the extent of injury in a child abuse case. That goes to the type of conduct that can constitute torturing a child. And this case, like its companion, illustrates the gulf between the range of conduct and the harms covered by the Oklahoma child abuse statute and the federal assault regime, right? Here, and the facts of this case, although they're not material to the assessment of whether the guideline is sufficiently analogous, certainly illustrate why the breadth of conduct that is covered by the Oklahoma child abuse statute goes far beyond what's contemplated by the federal assault statutes. Just for example, the trial testimony describes in some detail the conduct that Joel Smith engaged in that would not constitute a federal assault, but that did constitute torturing MV. For instance, forcing her to wear a diaper when she was nine years old, all night long, all day, working outside. None of these things involved an attempted battery or physical contact. Was there other conduct that did qualify as an assault?  When he beat her with a belt, that was an assault. But so much of this conduct goes beyond that and still constitutes child abuse under the Oklahoma statute, that both under the guidelines and as we'll discuss in the next case under Lewis, these are very different crimes. But counsel, could you help me understand why we should be engaging into this sort of elements-based inquiry? So I'm not quite sure how to situate what you just told us into what our law requires that we review. No, precisely. And I think, as I just said, this is an elements-based inquiry. This is just an illustration of the breadth of the Oklahoma statute. But when we look at the elements, we look at the jury instructions promulgated by the Oklahoma Court of Criminal Appeals, and those instructions define torture as including extreme mental cruelty. And the conduct in this case illustrates, really, how that can provide a way to violate 843.5A without committing an assault. And that's why the district court did not err in concluding there was no sufficiently analogous guideline, that neither 2A2.3 nor 2A2.2 was sufficiently analogous. It's not clear to me that the court considered 2A2.2, or sorry, 2A2.3. I think the court was just accepting that Clark said there was no sufficiently analogous guideline for child neglect and extrapolating that to child abuse. And that brings us to another point. And I think Ms. Yaffe talked a lot about our burden of showing harmlessness. In her brief, she explains that the concurrent sentencing doctrine is a discretionary doctrine, but, and suggests that it's been regarded with disfavor. But the Williams case that suggests that the concurrent sentencing doctrine has been regarded with disfavor, cites a 1982 case from this court, Montoya. And Montoya, what Montoya recognizes is that the reason the concurrent sentencing doctrine is sometimes regarded with disfavor is because when a defendant challenges one of the convictions, there are collateral adverse consequences of a conviction. And so the court should address the validity of a conviction. In 1987, the Supreme Court agreed, and in Wray versus United States, made clear that the concurrent sentencing doctrine does not apply under those circumstances. But this case in Harris in 2012, not the same Harris case that Ms. Yaffe was talking about, but in Harris, applied the concurrent sentencing doctrine and explained the distinction that in and Montoya for that matter, and I think in Williams, the 2022 case, all of those cases involve circumstances under which there were adverse sentences or collateral consequences. And the defendant was challenging the conviction as to certain counts, or as in Williams, where the changing the drug quantity calculation as to the drug count also changed the potential sentence on the gun count because of a cross reference. Those are cases in which applying the concurrent sentencing doctrine would not be appropriate. Here, however, Mr. Smith has conceded that the district court did not err in finding there was no sufficiently analogous guideline to Oklahoma child neglect. That 120-month sentence should stand. And if you look at the facts of sentencing here, the government asked for a 240-month sentence, the defendant asked for a 60-month sentence, and the district court imposed a 120-month sentence on both counts. And I respectfully disagree with Ms. Yaffe that the fact that the court gave the same sentence on both of those counts after finding no sufficiently analogous guideline suggests that the court would be inclined to impose a lower sentence on both rounds if this were remanded. Well, counsel, just to make sure we're understanding your argument, do you need the concurrent sentencing doctrine to succeed on this issue? I should not because I don't think that the district court erred in finding that the federal assault guideline was... Well, I understand that part, but do you need it on the harmless error part? There are actually two different ways that I could win on harmless error. First is if this court just looks at it and says, this is not a court, given the statements that it made and the decision that it made at sentencing, and the fact that the defendant has conceded that the 120-month sentence, the no sufficiently analogous guideline finding was correct as to child neglect, the court could just decline to review this under the concurrent sentencing doctrine. However, it could also look at the record and conclude, particularly based on the egregious facts of this case and the circumstances of the similar case in Walker where the government conceded that 2A.2.2 was sufficiently analogous, but the district court explained that the guideline was peculiarly inadequate to address the harms of child abuse. And thus, this court could conclude that even if it did not exercise its discretion to apply the concurrent sentencing doctrine, that the error here was harmless because even if this were to go back, the district court could apply whatever guideline and conclude and very upward to apply the same sentence for child abuse as for child neglect. Could I just ask you, is there anything else that the court said at the sentencing proceeding that would give us reason to think it's reasonably probable that the court would still impose a 120-month sentence? I don't think the court said a lot about its reasons beyond that finding. But I'm sorry, I don't have that transcript before me. But I know that my brief does not cite a lot of language suggesting that the court said, as courts sometimes do, that I would impose the same sentence regardless of the findings. So we don't have that. But given the fact that an assault conviction and sentence in the range that's discussed in the briefs would have applied if Joel Smith beat MV with a belt one time, and here we have a where the testimony establishes that these children were beaten daily, that he locked her into a pack and play every night, made her work in the hot sun from the ages of five to nine for four years, I do not think it is even colorable that on remand that the district court would impose a sentence lower than 120 months as to the child neglect. This is a child control case. The appellant relied on that. And that seems to suggest that in the normal course, when we are mindful of the sentencing package doctrine, that we would remand in a way that the district court would be free to resentence on all counts. So could you address that, please? Yes. And my answer to that is simply yes. I am often here arguing for application of the sentencing package doctrine, right, that one count, that a significant error in one count would result in at least a possibility of a lower sentence as to the other counts. I just think that both the facts here and the fact that the district court had the full range, this wasn't a case where the court felt constrained by any guideline. The defendant asked for a 60-month sentence, and that was a sentence that the judge could have given as well. There was not a statutory minimum. There was nothing really that led this court, other than the 3553A factors, that led this court to the 120-month sentence that imposed, as opposed to the 240 the government asked for or the 60 that the defendant asked for. This is a situation where, unlike those sentencing package doctrine cases, there's no reason to believe that the sentence the district court chose was anchored by anything. And so moving that range for one of the counts doesn't suggest that the district court would change the sentence as to the other counts. Thank you. That's very helpful. I think I better tell me if I've got it right. I think the government is not challenging the standard here, right? That the sentencing package doctrine doesn't apply. You're not suggesting it only applies when a conviction has been vacated. It squarely applies to the situation here. It's just that the facts here don't result in a position that would support the appellant, right? You're not quibbling with that first principle, right? I'm not sure. That's, I think, maybe a stronger statement of our position. Where the defendant hasn't challenged their conviction on the first count and hasn't challenged the same decision that was made by the district court as to the second count, our position is that the lack of likelihood that, or the lack of relationship between those two sentences, where there's no guidelines change as to the second count, or no guidelines. And particularly here, where the district court didn't, this is not a case like Petrel, where the sentencing guidelines were wrongly calculated, right? Where the district court was applying the wrong guidelines range and posed a sentence based on the wrong range and needs an opportunity to correct it. Because the wrong range in those kinds of cases is what directs the district court's first sentencing determination. Here, the district court had ultimate discretion as to the entire range of punishments and chose 120 months. And for that reason, those sentencing package doctrine cases that focus on where the court got the range wrong and the new range would suggest that it should reconsider the entire sentence. Those cases don't really apply in this circumstance, partially because of, really because of the facts, but more because the facts here are that the district court had before it the entire range of punishment. Does that answer your question? It does. Thank you. Counsel, could you address the anchor effect argument? Oh, and before you do, I think I got us off track on the sentence. I think it's 180 months. Thank you. Yeah. Yes, I definitely misspoke a couple of times there. I think Ms. Yaffe is correct about the anchoring effect of a guideline sentence, and it's really the crux of the sentencing package doctrine as well. But here, because the counts, although based on related conduct, reflect the seriousness of the offenses, the child abuse conviction is for conduct at least as serious and not more serious than the child neglect conduct. And therefore, we don't believe that on remand, the district court would change a sentence at all. And for that reason, we would ask this court to affirm. Thank you. I think we're out of time. Thanks to both of you. You both packed in a lot of arguments there. And so I think we used the time efficiently. At this point, we'll consider this case submitted. Ms. Yaffe, I think that's it for you today, correct? Do you have another argument? If not, you may be excused. And Ms. Alam, we'll be seeing you in the next case.